IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE,<br><br>    Plaintiff,<br><br>    v.<br><br>GRAND AVENUE TRANSPORT,<br><br>    Defendant.<br>_____/ | No. C 09-00197 CRB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    This dispute involves the interpretation of an insurance contract. The parties agree that there are no genuine issues of material fact, and disagree only about the legal impact of two endorsements in the contact.

## BACKGROUND

1. <u>The Dispute</u>

    XTRA is a Missouri corporation that leases and rents trailers used for hauling cargo. Stip. at 2. XTRA leased a trailer to Grand Avenue Transport, Inc., a California trucking company. <u>Id.</u> In October 2005 in Pleasanton, California, a Grand Avenue driver, Anthony Bravo, was hauling the XTRA trailer leased by Grand Avenue. <u>Id.</u> Bravo fell asleep at the wheel and collided with a vehicle parked on the side of the road. <u>Id.</u> The occupant of that vehicle, Jose Rodriguez, was killed. <u>Id.</u>

    Jose and Catalina Rodriguez, the decedent's parents, brought a wrongful death action in state court. <u>Id.</u> Initially, the Rodriguezes sued Grand Avenue, Bravo, the tractor owner,

and XTRA, but all of the defendants other than Grand Avenue were subsequently dismissed. Id. Before trial, Grand Avenue settled with the Rodriguezes, admitting liability and submitting the issue of damages to an arbitrator. Id. The arbitrator issued an award of damages against Grand Avenue in the amount of $5 million. Id. That award was confirmed as a judgment, and Grand Avenue's insurer, Century National, paid its $1 million policy limit in satisfaction of the judgment. Id. Four million dollars of the damages award was left unsatisfied.

XTRA's insurance was provided by Zurich American Insurance Co., which issued a commercial auto policy for the relevant period with a limit of $2 million per accident. Id.; id. Ex. A. The parties agree that the XTRA trailer leased to Grand Avenue and involved in the accident was a "covered auto" and a "leased auto" under the Zurich policy. Id. at 3. The parties disagree about whether the Zurich policy covers any portion of the unpaid judgment the Rodriguezes recovered against Grand Avenue.

Zurich filed a complaint for declaratory judgment in this Court, arguing that it does not owe the Rodriguezes any damages. Z MSJ at 1. Zurich now moves for summary judgment in its favor and against the Rodriguezes, who have counterclaimed for declaratory relief and for direct recovery under California Insurance Code § 11580(b)(2). Id. The Rodriguezes have also moved for summary judgment, claiming that they are entitled to recover under the Zurich policy. R MSJ at 8.

2. The Zurich Policy

The Zurich policy is 214 pages long and contains 83 forms. Z Opp. at 10. Two endorsements in the Zurich policy are relevant to the parties' motions.[1]

The first endorsement is titled "Leasing or Rental Concerns - Contingent Coverage." It is not identified on the policy's Business Auto Coverage Part Declarations page at the

---

[1] At the motion hearing on November 13, 2009, at the Rodriguezes' request, the Court agreed to allow the parties to submit supplemental briefing as to whether Illinois or Missouri law applied to the Zurich policy. In their brief, the Rodriguezes argued that, while Illinois and Missouri law did not necessarily apply, a separate endorsement in the Zurich policy, the MCS-90 endorsement, requires coverage. Add. Brief at 2. The Court will therefore address both the Leasing or Rental Concerns – Contingent Coverage endorsement, which was the initial focus of this lawsuit, and the MCS-90 endorsement, which was the subject of the parties' supplemental briefing.

2

beginning of the policy, though that page states underneath "Forms and Endorsements Applying to this Coverage Part and Made a Part of this Policy at Time of Issue," "See Schedule of Forms and Endorsements." Id. at ZPOL 2. The Schedule of Forms and Endorsements, a few pages later, lists the endorsement's form number, edition date, and full name. Id. at ZPOL 6. The endorsement is not mentioned in the Business Auto Coverage Form's list of Exclusions. Id. at ZPOL 24.

The endorsement is attached to the policy two forms behind the Business Auto Coverage Form. Id. It is just over one page in length, and contains no unrelated policy provisions. Id. at Ex. A, ZPOL 35-36. At the top of the endorsement, in all-capital type that is larger than the type used for the body of the endorsement, is the statement: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Id. The title of the endorsement is in still larger, bold, all-capital letters just below that. Id. The line following that again notes that the "endorsement modifies insurance provided under" the policy. Id.

The endorsement states that the Limits of Insurance are $2 million. Id. In several places it references the coverage "provided by this endorsement." Id. Most importantly, the endorsement states:

> A. Liability Coverage and any required no-fault insurance provided by the policy for a covered "auto" that is a "leased auto" <u>applies subject to the following provisions</u>:
> 1.  a.  The lessee or rentee has furnished you with a certificate of insurance, a copy of the policy or a copy of the endorsement making you an additional insured on the lessee's or rentee's policy as required by the leasing or rental agreement; <u>and</u>
>     b.  At the time of an "accident" the insurance required by the leasing agreement is not collectible.

Id. (emphasis added).

The endorsement includes a definition of the term "leased auto" as used in section A of the endorsement. Id. at ZPOL 36. As to subsection (1)(a), the parties agree that Grand Avenue named XTRA as an additional insured under its policy with Century National, and that Grand Avenue provided a certificate of insurance to XTRA. Stip. at 3. As to subsection (1)(b), the Rodriguezes also do not dispute Zurich's interpretation that "the second condition of coverage– that the lessee's insurance be 'not collectible' at the time of the accident– is not

3

met" because Century National in fact paid the Rodriguezes $1 million. See Z MSJ at 8. The parties dispute only whether this endorsement, with its unmet contingency, is enforceable, and thus spares Zurich from paying damages.

The second endorsement at issue in the Zurich policy is the MCS-90 endorsement, which provides:

> [I]nsurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy. . . ." See ZPOL 0056.

The MCS-90 endorsement goes on to say that "no condition, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described." Id. The endorsement states at the top that the policy to which the endorsement is attached provides primary insurance in excess of $2,000,000 for each accident; at the bottom, the endorsement includes a Schedule of Limits for Public Liability listing limits for the transport of nonhazardous materials as $750,000. Id. at ZPOL 0056-57. The parties dispute whether this endorsement requires Zurich to pay damages.

**LEGAL STANDARD**

1. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact issue is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

2. Interpretation of Insurance Policies

"The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved . . . . By definition, it entails the payment of money in order to resolve

4

liability." Buss v. Superior Court, 16 Cal. 4th 35, 45-46 (1997). To determine whether the duty to indemnify exists, "'courts must focus on the nature of the risk and the injury, in light of the policy provisions.'" Safeco Ins. Co. of America v. Fireman's Fund Ins. Co., 148 Cal. App. 4th 620, 630 (2007) (quoting Vandenberg v. Superior Court, 21 Cal. 4th 815, 840 (1999).

A judgment creditor must prove that his claim falls within the scope of the policy's coverage. Cal. Ins. Code § 11580(b)(2). A judgment creditor must prove that the "policy covers the relief awarded in the judgment." See Miller v. American Home Assurance Co., 47 Cal. App. 4th 844, 848 (1996) (internal citation omitted). An insured has the burden of proving that the claim falls within the scope of the applicable insurance policy. See Aydin Corp. v. First State Ins. Co., 18 Cal. 4th 1183, 1188 (1998). The insured must first demonstrate that there is coverage before the insurer must invoke an exclusion. Uhrich v. State Farm Fire & Cas. Co., 109 Cal. App. 4th 598, 609 (2003).

## DISCUSSION

1. The Leasing or Rental Concerns - Contingent Coverage Endorsement

The Rodriguezes advance two arguments for why the Leasing or Rental Concerns - Contingent Coverage endorsement, which would appear to bar coverage in these circumstances, is not enforceable. First, they argue that the endorsement does not comply with California Insurance Code Section 11580.1. R Opp. at 5. Second, they argue that the endorsement is not conspicuous, plain, or clear. Id. at 14.

A. Application of California Insurance Code § 11580.1

The Rodriguezes argue that Cal. Ins. Code § 11580.1 specifies the only limitations that California allows to permissive user coverage, and, because Zurich's endorsement does not comport with either limitation, the endorsement is unenforceable. Id. at 5-6. However, section 11580.1(a), which precedes the two limitations the Rodriguezes rely on, states: "No policy of automobile liability insurance described in Section 16054 of the Vehicle Code covering liability arising out of the . . . use of any motor vehicle shall be issued or delivered

in this state . . . unless it contains the provisions set forth in subdivision (b)." Section 11580.1 therefore only applies to policies that are issued or delivered in California.

There is no evidence in the record that the Zurich policy was either issued or delivered in California. Indeed, there is compelling evidence that it was issued and delivered elsewhere. See Z Reply at 3 ("Zurich prepared and issued the policy in Chicago, Illinois, and then delivered the policy to [the broker] in . . . Missouri. . . . [who,] in turn, delivered the policy to XTRA in St. Louis, Missouri."); and Tallungan Decl. at ¶ 4; Dreller Decl. at ¶ 4. Accordingly, section 11580.1 does not apply to the Zurich policy. See also Occidental Fire & Cas. Co. of N.C. v. Lumbermens Mutual Cas. Co., 667 F. Supp. 679, 686 (N.D. Cal. 1987) (finding that section 11580.1(b) did not apply because policy issued in Bermuda and delivered in Singapore was not issued or delivered in California).

### B. Whether the Leasing or Rental Concerns - Contingent Coverage Endorsement is Conspicuous, Plain and Clear

The second argument the Rodriguezes make as to why the Leasing or Rental Concerns - Contingent Coverage endorsement is not enforceable is that the endorsement is neither conspicuous, plain, nor clear. "Coverage may be limited by a valid endorsement. . . . But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." Haynes v. Farmers Ins. Exchange, 32 Cal. 4th 1198, 1204 (2004). The burden of making such language conspicuous, plain and clear is on the insurer. Id.

#### i. Conspicuous

In Haynes, the California Supreme Court explained that in assessing conspicuousness, courts look to "how a coverage-limiting provision actually has been positioned and printed within the policy at issue." 32 Cal. 4th at 1209. Courts are to read the policy from the perspective of a layman, rather than an attorney or insurance expert. Id. The court in Haynes found an endorsement to be inconspicuous where: "it was listed on the policy's declarations page only by alphanumeric designation ('S9064');" the language in the endorsement itself was "'not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print;'" one of the terms in

6

the title was nowhere defined; and the relevant limiting language was "in the least conspicuous position on the page"– essentially "bur[ied]." Id. at 1207-1209.

Haynes cited to two additional cases finding provisions unenforceable because they were inconspicuous. Id. at 1205-06. The first of these is Jauregui v. Mid-Century Ins. Co., 1 Cal. App. 4th 1544, 1550 (1991), in which the limiting language was "surrounded by language that has nothing to do with exclusions or limitations on coverage." The second is Thompson v. Mercury Cas. Co., 84 Cal. App. 4th 90, 96-97 (2000), in which the limiting language was included in the "other insurance" subsection, though it had nothing to do with other insurance. In addition, the language fell within an unnumbered subsection containing "30 random and unrelated subsections," and was not set apart in any way from the rest of the fine print, though other parts of this section were bolded.

Another example of an inconspicuous limitation is Ponder v. Blue Cross of So. Cal., 145 Cal. App. 3d 709 (1983). The court there found that an exclusion for temporomandibular joint syndrome was "conspicuous only in the sense that it contains the longest word in the entire body of the contract." Id. at 722. The exclusion appeared on a page with over 2,056 words, 17 numbers, and 54 letters with multiple headings and subheadings. Id. The court noted that the exclusions section itself included 923 words and took up just a third of a page– and that the exclusion at issue was found under the unassuming subheading of "dental care services." Id.

In contrast to Haynes, Jauregui, Thompson and Ponder, the endorsement in the Zurich policy is quite conspicuous. Its position makes sense, falling close behind the main Business Auto Coverage Form. See Stip. Ex. A at ZPOL 22-32, 35-36. In addition, it is identified in the Schedule of Forms and Endorsements by its complete name, not only its alphanumeric designation. Id. at ZPOL 6. Though the Rodriguezes complain that "it is only listed as one of 71 other endorsements," R MSJ at 12, this was a lengthy policy involving a complicated insurance risk. As Zurich argues, "[t]he Contingent Coverage Endorsement is no more or less important than any other policy form– it just happens to be the form at issue in this lawsuit." Z Opp. at 10.

7

The printing of the endorsement is also clear. At its top is the statement, in large, all-capital letters, that the endorsement changes the policy. Id. at ZPOL 35. The title of the endorsement is in still larger, bold, all-capital letters. Id. The text of the endorsement is set apart on its own two pages, is uncrowded, and has no unrelated text surrounding it. Id. at 35-36. The only new term in the endorsement, "leased auto," is defined in the endorsement itself. Id. at 36. As in Venoco, Inc. v. Gulf Underwriters Ins. Co., 175 Cal. App. 4th 750, 759 (2009), the endorsement is "not hidden in fine print nor placed in an unusual part of the policy." It is conspicuous.

### ii. Plain and Clear

To be enforceable, the endorsement must also be plain and clear. The court in Ponder explained that "[t]his means more than the traditional requirement that contract terms be 'unambiguous.' Precision is not enough. Understandability is also required." 145 Cal. App. 3d at 723. In that case, for example, the court found the exclusion for temporomandibular joint syndrome to be unclear because the policy never defined that syndrome, let alone did so using "the vocabulary of average lay persons." Id. at 723-26. In Haynes, the court's discussion of "plainness and clarity" also involved an undefined term– the term "permissive user"– but identified other sources of confusion as well. 32 Cal. 4th at 1211. The court complained that the endorsement at issue had "repeated cross-references . . . to policies other than the car policy," "confusing language surrounding and introducing the permissive user limitation," and directions to the insured to insert the limitation into two separate parts of the policy. Id. at 1212. It concluded that these problems "seriously impair[ed] the clarity with which the limitation imparts its intended message." Id.

The Rodriguezes argue that the Zurich policy here is similarly unclear for a variety of reasons. First, they argue that the Business Auto Coverage Form "provides coverage for all accidents," without limitation, and that it is only the endorsement that excludes coverage. R MSJ at 13-14. But that is what endorsements do– they change the terms of the policy. Moreover, "[i]f there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls." Aerojet-General Corp. v. Transp. Indem. Co., 17 Cal. 4th

38, 50 n.4 (1997) (internal citation omitted). The Rodriguezes add that "[i]f a reader's attention is eventually drawn to the Endorsement" – really a conspicuousness argument– the endorsement is confusing because it is not titled a "Limitation of Insurance" or "Policy Exclusion." R MSJ at 14. But calling the document an "endorsement" and using it to limit coverage is not unclear, or unusual. See Adams v. Explorer Ins. Co., 107 Cal. App. 4th 438, 450 (2003) (endorsements may vary any term of the policy, and may delete insureds).

The Rodriguezes' second, and main, argument is that "it is entirely unclear if the liability coverage only applies or also applies when the two specified conditions are met." R MSJ at 14. Essentially they contend that it is not clear whether the endorsement provides an additional layer of coverage and not a limitation of coverage, in part due to references in the endorsement to "coverage provided by this endorsement." Id. at 14-15, Stip. Ex. A at ZPOL 35. However, the endorsement's title communicates that coverage for leasing or rental – a risk already covered by the policy– is subject to contingencies. Id. The endorsement's limiting language is in clear, everyday language: "Liability Coverage and any required no-fault insurance provided by the policy for a covered 'auto' that is a 'leased auto' applies subject to the following provisions." Stip. Ex. A at ZPOL 35. Despite the Rodriguezes' argument to the contrary, the word "and" makes clear that "Liability Coverage" is part of the sentence and that the sentence is not merely about no-fault insurance. See id. The sentence plainly refers to coverage provided by the policy, and specifically to leased autos covered by the policy. Id. Unlike in Ponder and Jauregui, here the only new term, "leased auto," though not technical, is defined in the endorsement itself. Id. at 36. The language "subject to" is a common term– the Rodriguezes do not argue otherwise. Accordingly, this language is unambiguous and cannot reasonably be construed as providing an additional layer of coverage, rather than limiting coverage provided by the policy. See Mercury Ins. Co. v. Pearson, 169 Cal. App. 4th 1064, 1070 (2008) ("Courts will not adopt a strained . . . interpretation in order to create an ambiguity where none exists.") (internal citation omitted).

The Rodriguezes next argue that according to the Other Insurance section of the Zurich policy, the Zurich policy was supposed to act as an excess policy (sitting over the

underlying policy), and that "there is nothing in the endorsement that even arguably affects this coverage." R MSJ at 16-17. This distinction is irrelevant: the endorsement clearly makes "liability coverage . . . provided by this policy" subject to two contingencies. Stip. Ex. A at ZPOL 35. It does not specify whether that liability needs to be primary or excess. Accordingly, that the policy has an "Other Insurance" section that might make the Zurich policy an excess policy has no impact on whether coverage was triggered under the endorsement. Moreover, it has no bearing on whether the policy is plain and clear.

Finally, the Rodriguezes argue that the endorsement's reference to "the minimum limit required by any applicable compulsory or financial responsibility law" is unclear. Indeed, in Jauregui, the California Court of Appeal held that a general reference to "the limits of the Financial Responsibility Law" was not understandable, and that the policy should have identified either the specific monetary limits, or specific statute being cited. 1 Cal. App. 4th at 1550. The Rodriguezes reject the holding of Del Real that such language was acceptable and clear, see 962 F. Supp. 2d 962 (decided several years after Jauregui and distinguishing it in the commercial liability context), and claim that the California Supreme Court has since endorsed Jauregui in Haynes. See R Opp. at 18. Haynes did not so hold, however, simply noting in a footnote that an insurer in that case had specified the dollar amounts required by law and thereby addressed the Jauregui court's concerns. See 32 Cal. 4th at 1209 n.7. Moreover, one does not even reach this language about the limit of insurance for lessees until coverage is triggered, and coverage cannot be triggered unless the two clearly-worded contingencies are met.

The Rodriguezes have failed to point to any provision that takes away or limits coverage and that "seriously impairs the clarity with which the limitation imparts its intended message." See Haynes, 32 Cal. 4th at 1212. The endorsement is therefore conspicuous, and plain and clear. Accordingly, it is enforceable.

2. The MCS-90 Endorsement

10

The Rodriguezes next argue that because Grand Avenue and Bravo (the driver) are both "insureds" under the Zurich policy,[2] the MCS-90 endorsement requires Zurich to pay for any judgment recovered against them resulting from negligence in the operation of a motor vehicle. Add. Brief at 5-6. If true, the Rodriguezes argue, they are due $2,000,000, notwithstanding the Contingent Coverage clause. Id. In support of this interpretation, the Rodriguezes rely on the plain language of the MCS-90 endorsement, as well as John Deere v. Nueva, 229 F.3d 853, 856 and n.3 (9th Cir. 2000). See id. at 3-4.

In John Deere, 229 F.3d at 854, the Ninth Circuit set out to determine whether MCS-90 "creates a duty on the part of an insurer to indemnify a permissive user of an auto not covered by the underlying policy for injuries he negligently caused to members of the public." The court held that the MCS-90 endorsement "negates the [policy's] limitation that only users of 'covered autos' are 'insureds.'" Id. at 859. It noted that so holding effectuates the policy the endorsement was designed to serve– "modifying a policy to insure the availability of insurance for negligently injured members of the public." Id. at 860.

Zurich argues that John Deere is distinguishable, because there the Ninth Circuit "was faced with a victim who would receive no compensation unless there was MCS-90 coverage," but here "the victim's family has already received more than the federally-mandated minimum." Resp. at 3. Despite the broad language of the endorsement, a great deal of authority supports such a distinction.[3] Zurich points to several cases holding that the MCS-90 endorsement "simply covers the public when other coverage is lacking." See, e.g., Canal Ins. Co. v. Carolina Cas. Ins. Com., 59 F.3d 281, 283 (1st Cir. 1995). See also Kline v. Gulf Ins. Co., 466 F.3d 450, 455-56 (6th Cir. 2006) (distinguishing between cases where

---

[2] The Court rejects Zurich's argument that "only XTRA is the named insured in both the Zurich policy and the attached MCS-90 endorsement" in light of the language of the policy naming as an insured "anyone else while using with your permission a covered 'auto,'" see Add. Brief at 4 (citing ZPOL 0023), and of John Deere, 229 F.3d 853 (9th Cir. 2000), discussed below.

[3] Unfortunately, none of it is Ninth Circuit authority. The circuit has not addressed the MCS-90 issue in a published opinion since John Deere, and it was not confronted with such facts in John Deere.

11

plaintiff's recovery already exceeded proscribed limit, and those where families received no compensation).[4]

Most relevant is Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 871 (10th Cir. 2009), in which Yeates, an individual, was injured in a collision with a truck owned by Birmingham Livestock, who had two insurance policies, with State Farm and with Carolina Casualty. The State Farm policy, which explicitly insured the truck involved in the accident, promptly paid $750,000 to Yeates. Id. The Carolina Casualty policy, which did not explicitly cover the truck involved in the accident, included an MCS-90 endorsement, which provided that Carolina Casualty would pay up to $1,000,000 for "any final judgment recovered against" Birmingham Livestock. Id. Carolina Casualty filed a declaratory action seeking a ruling that it had no liability to Yeates, in part because State Farm had already tendered $750,000, which was the federal mandatory minimum. Id. at 872.

The Tenth Circuit, sitting en banc, noted that the approach of the majority of circuits was to treat the MCS-90 endorsement "as one of a surety rather than a modification of the underlying policy" – as "a safety net in the event other insurance is lacking." Id. at 878 (citing cases in First, Sixth, Third, Fourth, Fifth, Ninth[5] and Seventh Circuits). The Court went on to adopt the majority approach, holding:

> [A]n insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent. <u>Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.</u>

Id. at 879 (emphasis added). In the course of an extensive discussion of the regulatory scheme that gave rise to MCS-90, the court noted that a motor carrier may demonstrate its

---

[4] The Rodriguezes' efforts to distinguish Kline, Reply at 2-3, are unavailing. Kline did not reject the notion that the MCS-90 endorsement was not triggered if other coverage was available; in that case other insurers had provided "some, albeit inadequate, coverage." 455 F.3d at 452 n.3.

[5] Yeates cited to the earlier case of Harco Nat'l Ins. Co. v. Bobac Trucking Inc., 107 F.3d 733, 736 (9th Cir. 1997). Though Harco was distinguished, in part, by John Deere (as to its holding that the MCS-90 endorsement did not expand coverage to autos not covered under the main policy), Harco held elsewhere that "the district court's comparison of an insurer's obligation under an MCS-90 to that of a surety does not demonstrate any error" and that "[t]hat analogy was apt." See 107 F.3d at 736.

financial responsibility under the MCA through either the MCS-90 endorsement, with a surety bond, or with self-insurance. Id. It concluded that "the MCS-90 endorsement operates in much the same way as the two alternatives– i.e., as a surety in the event judgment against the carrier is for some reason unsatisfied." Id. at 880-81. Because the State Farm policy was sufficient to meet the federally mandated minimum level for the type of property being transported, the MCS-90 endorsement was not triggered. Id. at 886.

Secondary sources also recognize that this is the majority view. See, e.g., Michael Jay Leizerman, "Finding Insurance in Truck Crash Cases," 44 Feb. Trial 27, Feb. 2008 ("The MCS-90. . . . endorsement is intended only to apply to a motor carrier when the underlying policy does not provide coverage for some reason"); Irvin E. Schermer & William Schermer, "Motor carrier financial responsibility – the MCS-90 endorsement – MCS-90 indemnity obligations," 1 Auto. Liability Ins. 4th, Nov. 2009, at § 2:12.50 ("The obligations under the MCS-90 are triggered only when the liability policy of which it is a part would otherwise not provide coverage for the insured, and, in the case of a nonowned vehicle, when its owner has no coverage for the accident"); James R. Lilly, "Insurance Coverage and Conflicting Interpretations of the MCS-90," 74 Def. Couns. J. 343, 349 (Oct. 2007) ("A majority of jurisdictions hold that the MCS-90 has no affect on the allocation of coverage among insurers; once the injured party is compensated, the endorsement is ignored").[6]

Accordingly, and in the absence of contrary guidance from the Ninth Circuit, this Court follows the majority circuit view and holds that MCS-90 is not triggered once the federally mandated minimum has been satisfied. So holding does not conflict with John Deere, which dealt primarily with whether the MCS-90 endorsement operated to cover an individual not otherwise covered by the policy, but which did not address the issue of other insurance having already paid the federally mandated minimum. See 229 F.3d at 854. The Court notes that at least one other district court in the circuit indicated confidence in such a holding. See Canal Ins. Co. v. Lincoln Gen. Ins. Co., No. C07-553-JPD, 2008 WL 3103270,

---

[6] Note that since this article was published, the Tenth Circuit rejected its earlier approach and joined the majority with Yeates.

13

at *7 (W.D. Wash. Aug. 4, 2008) (noting that Ninth Circuit "has indicated a strong willingness" to join the majority as interpreting the purpose of the MCS-90 as protecting injured members of the public and acting as "a surety rather than an extension of coverage").

Here, Century National has already paid the Rodriguezes $1,000,000. Stip. at 2. Zurich asserts, and the Rodriguezes do not deny, that the trailer at issue was carrying nonhazardous materials. See Response at 6-7 (citing RJN Ex. A, Ex. 1, CHP Report). The federally mandated minimum was therefore just $750,000. See Yeates, 584 F.3d at 885 ("Motor carriers must maintain at least $750,000 in financial responsibility coverage for vehicles transporting non-hazardous cargo"); ZPOL 0057 (MCS-90 listing minimum insurance for nonhazardous property as $750,000). Because the federally mandated minimum has been satisfied, the MCS-90 is not triggered, Zurich does not owe the Rodriguezes any money.[7]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Zurich's motion for summary judgment and DENIES the Rodriguezes' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 23, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[7] The Court declines to reach Zurich's alternative argument, that XTRA was not a "motor carrier" at the time of the accident. See Response at 11.